IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR JEFFERSON,<br>    Plaintiff | : | |
| | : | |
| | : | No. 1:22-cv-01416 |
| v. | : | |
| | : | (Judge Kane) |
| S. ELLENBERGER, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 in which pro se Plaintiff Omar Jefferson ("Jefferson") alleges that Defendant Peters ("Peters") violated his civil rights by falsifying a misconduct charge against him and that Defendant Ellenberger ("Ellenberger") violated his right to due process during the resulting disciplinary hearing. Presently before the Court is Defendants' motion to dismiss Jefferson's second amended complaint. (Doc. No. 16.) For the following reasons, the motion to dismiss will be granted and Jefferson's second amended complaint will be dismissed with prejudice.

**I.   BACKGROUND**

Jefferson filed the complaint that initiated this case on September 12, 2022. (Doc. No. 1.) The Court dismissed the complaint without prejudice for failure to state a claim upon which relief could be granted on October 19, 2022. (Doc. Nos. 6–7.) Jefferson filed an amended complaint on November 14, 2022. (Doc. No. 8.) The Court dismissed the amended complaint without prejudice on November 28, 2022. (Doc. Nos. 9–10.) Jefferson filed a second amended complaint on December 27, 2022. (Doc. No. 11.)

According to the second amended complaint, Jefferson was incarcerated in Smithfield State Correctional Institution ("SCI-Smithfield") on December 10, 2021. (Id. at 4.) On that date, Jefferson requested a pair of bigger shoes, which prompted Peters to come to his cell. (Id.)

Peters allegedly denied the request for bigger shoes, and Jefferson said that he would "write him up." (Id.) Peters then purportedly asked Jefferson if he was threatening him and told him to pack his stuff because he was being transferred to solitary confinement. (Id.) Peters allegedly filed disciplinary charges against Jefferson, which averred that Jefferson assaulted Peters. (Id.) The charges were referred to Ellenberger, a disciplinary hearing officer at SCI-Smithfield, for the purpose of conducting a disciplinary hearing. (Id.) During the hearing, Jefferson allegedly requested that Ellenberger review video evidence and interview witnesses to the interaction between him and Peters and contended that doing so would absolve him of responsibility for the assault. (Id.) Ellenberger purportedly refused to do so, stated that she believed Peters's version of events, found Jefferson guilty of assault, and sentenced him to 90 days of solitary confinement. (Id.) The complaint seeks damages and injunctive relief requiring Defendants to reinstate Jefferson's "early release." (Id. at 5.)

Defendants moved to dismiss the second amended complaint on March 6, 2023, and filed a brief in support of the motion on the same day. (Doc. Nos. 16–17.) Defendants argue that dismissal is appropriate because the documentary evidence related to Jefferson's misconduct hearing directly contradicts the allegations in his second amended complaint. (Doc. No. 17.) Defendants assert that, contrary to the allegations in the second amended complaint, the documents from Jefferson's disciplinary hearing show that he sprayed Peters with a disinfectant during the relevant incident and that he did not request that witnesses be called or that video evidence be reviewed during the resulting hearing. (Id.)

Jefferson filed a brief in opposition to the motion to dismiss on April 14, 2023. (Doc. No. 18.) Jefferson concedes that the documents filed by Defendants are authentic documents from his disciplinary hearing but asserts that some documents from the hearing are missing from

Defendants' exhibits.  (Id. at 2.)  According to Jefferson, the missing documents show that he requested that two witnesses be called to testify and that he requested that video evidence be reviewed during his appeal of the underlying misconduct hearing.  (Id. at 3.)  Defendants filed a reply brief on April 26, 2023, in which they argue that the additional exhibits cited by Jefferson do not alter the analysis and that the second amended complaint should still be dismissed.  (Doc. No. 19.)  Jefferson then filed an unauthorized sur reply brief on June 5, 2023.[1]  (Doc. No. 20.)

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

---

[1] Local Rule 7.7 provides that sur replies may not be filed "without leave of court."  See M.D. Pa. L.R. 7.7.

are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).

The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). An undisputedly authentic document attached as an exhibit to a motion to dismiss by a defendant may be the basis to grant the motion to dismiss if the contents of the document contradict the plaintiff's allegations. See Pension Benefit Guar. Corp., 998 F.2d at 1196 (noting that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"

because "otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

### B.     Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

III.  DISCUSSION

    A.  **Jefferson's Second Amended Complaint**

Prisoners are generally afforded certain due process protections when they are accused of misconduct that may result in the loss of good conduct time, including: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges against them; (3) an opportunity to call witnesses and present documentary evidence when it is consistent with institutional safety and correctional goals to do so; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  See Wolff v. McDonnell, 418 U.S. 539, 563–67 (1974).

When reviewing the sufficiency of the evidence in a prison disciplinary proceeding, the Court must determine whether there is "any evidence in the record that could support the conclusion" reached by the hearing examiner.  See Superintendent v. Hill, 472 U.S. 445, 455–56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).  If there is "some evidence" to support the decision, the Court must reject any evidentiary challenges by the plaintiff.  See Hill, 472 U.S. at 457.  This standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence.  See Thompson v. Owens, 889 F.2d 500, 501–02 (3d Cir. 1989).

Jefferson asserts due process claims against Peters for allegedly initiating false misconduct charges against him and against Ellenberger for allegedly violating his right to procedural due process during the resulting disciplinary hearing.  (Doc. No. 11.)  Defendants assert that Jefferson's allegations are directly contradicted by the documents arising from his disciplinary hearing.  (Doc. Nos. 16–17.)  This Court may consider the documents arising from

6

the disciplinary hearing because they are undisputedly authentic documents that form the basis of Jefferson's claims.  See Mayer, 605 F.3d at 230; see also (Doc. No. 18 at 2 (conceding that the documents are authentic)).

The Court agrees with Defendants that the allegations in Jefferson's second amended complaint are directly contradicted by the documents arising from his disciplinary hearing. Jefferson asserts that Peters initiated a false assault charge against him, but Jefferson's written version of the events giving rise to the charge shows that there was a factual basis for Peters to charge Jefferson with assault.  See (Doc. No. 16-1 at 3).  According to Jefferson's written version of events during the disciplinary proceedings, Jefferson sprayed disinfectant after speaking with Peters at his cell door in an effort to stop the spread of COVID-19.  (Id.)  Jefferson stated that spraying disinfectant after speaking with someone at his cell was "a daily practice . . . to avoid COVID-19."  (Id.)  After Jefferson sprayed the disinfectant, Peters yelled that Jefferson had sprayed him and Jefferson immediately responded, "OMG sorry, I totally did not mean to spray you, I'm sorry."  (Id.)  Jefferson then tried to "apologize adamantly" for spraying Peters, but Peters's "mind was made up," and he ordered Jefferson to be transferred to solitary confinement and initiated the assault charge against him.  (Id.)  Jefferson acknowledged that he sprayed Peters in his written version of events, but asserted that he did so unintentionally and that it was a "terrible bone-head[ed] mistake."  (Id.)  Jefferson further stated that if video evidence was reviewed with respect to other instances when people spoke to him at his cell door, it would show that "literally every time someone talks near [his] door, [he] immediately spray[s] due to [his] fear of COVID-19."  (Id.)  In finding Jefferson guilty of assault, Ellenberger acknowledged his statement that he sprayed Peters unintentionally, but credited Peters's differing account that Jefferson had sprayed him intentionally.  (Id. at 2.)

7

Thus, contrary to Jefferson's allegations in the second amended complaint, the documents arising from his disciplinary charges show that there was a factual basis for Peters to initiate an assault charge against Jefferson, namely that Jefferson sprayed Peters with disinfectant.  Jefferson's due process claim against Peters accordingly fails as a matter of law because there is no basis to conclude that Peters falsified misconduct charges against Jefferson.

Jefferson's due process claim against Ellenberger is also belied by the documents arising from his disciplinary hearing.  Jefferson asserts that Ellenberger refused to call witnesses during the hearing, but nothing in Jefferson's written version of the events indicates that Jefferson told Ellenberger that anybody witnessed the interaction between him and Peters.  (Doc. No. 16-1 at 3.)  Ellenberger cannot be faulted for failing to call witnesses when the record does not reflect that she was aware of any witnesses during the hearing.

Similarly, Jefferson asserts that Ellenberger refused to review video evidence, but Jefferson's written version only states that footage of other interactions he had with people at his cell door would show that he regularly sprayed disinfectant after speaking with people.  (Id.)  Jefferson does not suggest in his written version that the video evidence would show that he did not spray Peters.  (Id.)  Accordingly, even if the video evidence had been reviewed, Ellenberger's decision would still require her to make a credibility determination between Jefferson's testimony that the spraying was accidental and Peters's testimony that the spraying was intentional.  Ellenberger's decision to credit Peters's testimony over Jefferson's does not constitute a violation of Jefferson's right to due process.  See Hill, 889 F.2d at 502 (noting that independent assessment of the credibility of witnesses is not part of a court's due process review of a disciplinary hearing officer's decision).

The exhibits Jefferson attaches to his brief opposing the motion to dismiss do not alter the Court's conclusion that Jefferson's factual allegations are contradicted by the documents arising from his disciplinary hearing. Jefferson attaches an appeal from the hearing that he filed on December 15, 2021, wherein he stated that two witnesses observed the incident in question and could testify in support of Jefferson. (Doc. No. 18-3 at 2.) Jefferson also stated in the appeal that he believed the disinfectant "may have mis[sed] and not got on [Peters] at all." (Id.) Jefferson's belated denial of the facts underlying the assault charge and belated mention of witnesses who could testify are not sufficient to establish a due process violation during the underlying hearing. Jefferson admitted during the hearing that he sprayed Peters with disinfectant and did not name or request any witnesses who could testify on his behalf. Ellenberger's finding that Jefferson sprayed Peters with disinfectant and her failure to call fact witnesses cannot be considered due process violations under those circumstances. Accordingly, the Court finds that dismissal of Jefferson's second amended complaint for failure to state a claim upon which relief may be granted is appropriate because his factual allegations are directly contradicted by the exhibits arising from his disciplinary hearing. See Pension Benefit Guar. Corp., 998 F.2d at 1196.

**B.     Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. Based on the foregoing, the Court will deny leave to amend as futile because Jefferson's factual allegations are directly contradicted by the documents arising from his disciplinary hearing.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and dismiss Jefferson's second amended complaint with prejudice for failure to state a claim upon which relief may be granted. An appropriate Order follows.

s/ Yvette Kane  
Yvette Kane, District Judge  
United States District Court  
Middle District of Pennsylvania